Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | John S. Jones |
| Debtor 2 (Spouse, if filing) | Kim R. Howard-Jones; fka Kim Howard; fka Kim Lewis |
| United States Bankruptcy Court for the: | Southern District of Ohio |
| Case number | 2:15-bk-50141 |

Official Form 410S1

# Notice of Mortgage Payment Change 12/15

If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.

**Name of creditor:** U.S. Bank Trust National Association, as Trustee of the PRP II Pals Investments Trust

**Court claim no.** (if known): 12-1

**Last 4 digits** of any number you use to identify the debtor's account: 1 4 9 3

**Date of payment change:**
Must be at least 21 days after date of this notice: 09/01/2020

**New total payment:** $ 952.51
Principal, interest, and escrow, if any

### Part 1: Escrow Account Payment Adjustment

1. Will there be a change in the debtor's escrow account payment?

   ☒ No
   ☐ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why: _____

   Current escrow payment: $ _____    New escrow payment: $ _____

### Part 2: Mortgage Payment Adjustment

2. Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?

   ☐ No
   ☒ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

   Current interest rate: 4.000 %    New interest rate: 5.070 %
   Current principal and interest payment: $ 541.38    New principal and interest payment: $ 723.08

### Part 3: Other Payment Change

3. Will there be a change in the debtor's mortgage payment for a reason not listed above?

   ☒ No
   ☐ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement.
   (Court approval may be required before the payment change can take effect.)

   Reason for change: _____

   Current mortgage payment: $ _____    New mortgage payment: $ _____

| Debtor 1 | John S. Jones | Case number (if known) 2:15-bk-50141 |
|---|---|---|
| | First Name　Middle Name　Last Name | |

### Part 4: Sign Here

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☐ I am the creditor.

☑ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

✘ /s/ Molly Slutsky Simons　　　　　　　　　　　Date 08/11/2020
Signature

Print: Molly Slutsky Simons　　　　　　　　　　　Title Attorney for Creditor
　　　　First Name　Middle Name　Last Name

Company: Sottile & Barile, Attorneys at Law

Address: 394 Wards Corner Road, Suite 180
　　　　　Number　Street

Loveland　　　　　　　OH　　45140
City　　　　　　　　　　State　ZIP Code

Contact phone 513-444-4100　　　　　　　　Email bankruptcy@sottileandbarile.com

Investor Loan # _____

**After Recording Return To:**

_____
_____
_____

This document was prepared by _____

_____[Space Above This Line For Recording Data]_____

## LOAN MODIFICATION AGREEMENT (5 Yr Freeze)

05/06/14

JOHN S JONES
KIM R HOWARD-JONES
3815 DEHNER DR
COLUMBUS        OH 43227

**Property Address:**
3815 DEHNER DR
COLUMBUS        OH 43227

Carrington Mortgage Services, LLC, as servicer and authorized agent of CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-16 (the "Lender"), is offering you this Loan Modification Agreement ("Agreement"), dated 05/06/14 (the "Effective Date"), which modifies the term of your existing mortgage loan as described in detail below.

### I. DEFINITIONS

**"Mortgage"** shall mean the mortgage, deed of trust, security deed or other security instrument encumbering the Property and corresponding to the above CMS Loan Number and recorded in the public records of County.

**"Note"** shall mean the note or other instrument of the same date and secured by the Mortgage.

**"Property"** shall mean the real and personal property described in the Mortgage and located at:

3815 DEHNER DR
COLUMBUS        OH 43227

**"Balloon Payment"** shall mean a final payment of the then-outstanding principal balance plus all earned interest remaining unpaid and due on the earlier of (i.) the date you sell the property securing the Mortgage, (ii.) the date you refinance the loan, (iii.) the date the loan is paid in full, or (iv.) the Maturity Date

**"Deferment"** shall mean any portion of the unpaid principal balance of the Note and Security Instrument that has been deferred, interest free.

**"Write Off"**, as referenced in this agreement, includes any of the following (i.) unpaid and deferred interest, (ii.) deferred principal, (iii.) escrow advances, (iv.) administrative fees, (v.) unpaid late fees, or other costs that have been forgiven and waived from your account and shall not be subject to any collection efforts by CMS.

For the purposes of this document "You/Your" shall mean the mortgagor/borrower on the Note and Mortgage and shall signify the singular or plural, where appropriate, if more than one mortgagor/borrower is executing this document.



1610 E. St. Andrew Place, Santa Ana, CA 92705
(866) 874-5860

## II. TERMS AND CONDITIONS

If your representations and covenants in Section 1 continue to be true in all material respects, then this Loan Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (i.) the Mortgage on the Property, and (ii.) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **Representations and Covenants.** You certify, represent to Lender, covenant and agree:

    A. You are experiencing a financial hardship, and as a result, (i.) you are in default under the Loan Documents or default is imminent, and (ii.) you do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. At least one of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C. There has been no impermissible change in the ownership of the Property since you signed the Loan Documents. A permissible change would be any transfer that the Lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D. You have provided documentation for **all** income that your household receives;

    E. Under penalty of perjury, all documents and information you have provided to the Lender in connection with this Agreement, including the documents and information regarding your eligibility for the Program, are true and correct;

2. **Acknowledgements and Preconditions to Modification.** You understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section 3 The Lender determines that any of the representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents.

    B. The Loan Documents will not be modified unless (i.) The Lender receives an executed copy of this Agreement, bearing your signature, on or prior to the last business day of the month following the Effective Date and (ii.) the Modification Effective Date (as defined in Section 3) has occurred. You further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if you fail to meet any one of the requirements under this Agreement.

    C. You agree that failure to pay the initial payment due on **06/01/14** (the, First Payment Due Date") shall be considered a breach of this Agreement and this Agreement will terminate. The Lender shall immediately resume any pending foreclosure action or proceeding. A new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will not be necessary to continue the foreclosure action ("Foreclosure Notices"). You waive any and all rights to receive such foreclosure notices to the extent permitted by applicable law.



1610 E. St. Andrew Place, Santa Ana, CA 92705
(866) 874-5860

### III. MODIFICATION TERMS

If your representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **05/01/14** (the "Modification Effective Date").

1.  **Upon the Modification Effective Date** your loan will be modified as follows:

    A.  The New Principal Balance of your Note will increase by all amounts and arrearages that will be past due as of the Modification Effective Date including unpaid and deferred interest, escrow advances, fees, and other costs in the amount **$10,109.22** ("Unpaid Amounts") less any amounts paid to the Lender but not previously credited to your Loan.

    B.  Your modification includes a reduction of principal balance ("Deferment") in the amount **$0.00**. You understand that the Deferment, if any, shall become payable as a Balloon Payment.

    C.  The total amount of Write Off included in your modification is **$306.27**. This Write Off amount constitutes a forgiveness of debt and you understand and agree that you will not be required to repay this amount. (Defined in Section I.)

    D.  Upon the Modification Effective Date you understand that the new interest bearing principal balance (the "Modified Balance") of your Note will be **$113,396.08** and that interest will begin to accrue on the Modified Balance based on the interest rate in effect under this Agreement which would not happen without this Agreement.

    E.  Your modified monthly payment is calculated using a **360 month** amortization period. You understand that any increase in the amortization period can result in a Balloon Payment.

    F.  The Maturity Date of your loan is **10/01/37**.

| CURRENT LOAN TERMS | |
|---:|:---|
| P&I Payment | $551.61 |
| Escrow Payment | $233.30 |
| Total Monthly Payment | $784.91 |
| Contractual Due Date | 04/01/13 |

| | |
|---:|:---|
| Interest Rate | 4.00000% |

| | |
|---:|:---|
| Previous Deferment | $0.00 |
| Principal Balance | $103,286.86 |
| Amortization Period | 363 Months |

| MODIFIED LOAN TERMS | |
|---:|:---|
| P&I Payment | $541.38 |
| *Tax Escrow Payment | $138.05 |
| *Insurance Escrow Payment | $95.25 |
| Total Monthly Payment | $774.68 |
| First Payment Due Date | 06/01/14 |

| | |
|---:|:---|
| Interest Rate | 4.00000% |

| | |
|---:|:---|
| Capitalization | $10,109.22 |
| Additional Deferment | $0.00 |
| Write Off | $306.27 |
| Modified Balance | $113,396.08 |
| Amortization Period | 360 Months |



1610 E. St. Andrew Place, Santa Ana, CA 92705
(866) 874-5860

*Escrow payments may be adjusted periodically in accordance with applicable law and therefore your total monthly payment may change accordingly. Your modified monthly payment may change if your account is subject to an escrow account and analysis for property taxes and insurance premiums. If you did not have an escrow account before, the timing of your tax and insurance bills may require that you make a payment to cover any such bills when they come due. This is known as an escrow shortage and can either be paid in a lump sum **$1061.62** when the loan is modified or over the next **60 months** in the amount of **$17.69** per month in addition to your modified monthly mortgage payment.

G. You understand that the modified interest rate, described in the above Table, will remain fixed for five (5) years from the Modification Effective Date, after which your interest rate will revert to that specified in your original Note. If your loan was previously modified then after (5) years from the Modification Effective Date your interest rate will revert to that specified in the most recent Loan Modification Agreement on record; however, nothing will affect the amortization of payments herein this Agreement.

H. You understand and agree that if you still owe any amounts under the Loan Documents due to any applicable Deferment and / or increase in the amortization period, you will be responsible to pay those amounts as a Balloon Payment (Defined in Section I.)

I. You understand and agree that by accepting this Loan Modification your credit score may be adversely affected, however CMS will not make inaccurate payment delinquency reports to any credit reporting agencies provided you are making your reduced modification payments in a timely manner. For more information about your credit score, go to http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

J. You will be in default if you do not comply with the terms of the Loan Documents, as modified by this Agreement.

## IV. ADDITIONAL AGREEMENTS AND LEGAL NOTICES

1. You agree to the following:

    A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

    B. Any fees, costs, advances that are currently due, but have not been billed to your account as of the Modification Effective Date shall be your responsibility to pay and in no way affects this Agreement.

    C. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that you previously entered into with Lender or any prior lender.

    D. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including your agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of your Loan.

    E. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and you have been advised of the amount needed to fully fund your escrow account.



1610 E. St. Andrew Place, Santa Ana, CA 92705
(866) 874-5860

F.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and you will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give you notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which you must pay all sums secured by the Mortgage. If you fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on you.

I.  That, as of the Modification Effective Date, you understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of your property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

J.  You understand that you are not required to waive or release any claims and/or defenses in connection with this Agreement.

K.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

L.  That, you will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and notwithstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

M.  That you will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. You understand that either a corrected Agreement or a letter agreement containing the correction will be provided to you for your signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If you elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.



1610 E. St. Andrew Place, Santa Ana, CA 92705
(866) 874-5860

N. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

O. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, you will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies you against any loss associated with a demand on the Note. All documents the Lender requests of you under this Section 4.M. shall be referred to as "Documents." You agree to deliver the Documents within ten (10) days after you receive the Lender's written request for such replacement.

P. That the mortgage insurance premiums on your Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which you may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and you have executed this Agreement.

CARRINGTON MORTGAGE SERVICES, LLC
As servicer and duly authorized agent for
CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS
TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-16

By: _____          _____
    As Attorney in Fact              JOHN S JONES

                                     5-16-14
_____              _____
Date                                 Date

                                     _____
                                     KIM R HOWARD-JONES

                                     5/16/14
                                     _____
                                     Date

_____[Space Below This Line For Acknowledgement]_____

After Recording Return To:
CitiMortgage
1000 Technology Drive, MS 420
O'Fallon, MO 63368
Doc Prep/Booking & Closing

This document was prepared by Loan Modification team
MERS MIN:
MERS Phone: 1-888-679-6377

_____[Space Above This Line For Recording Data]_____

## CITI AFFORDABLE MODIFICATION AGREEMENT
### (Step Two of Two-Step Documentation Process)

Borrower ("I"): **Kim R Howard-Jones and John S. Jones**, wife and husband
Lender ("Lender"): CitiMortgage Inc.
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 06/08/2007
Loan Number: 2004392306
Property Address [and Legal Description if recordation is necessary] ("Property"): 3815 DEHNER DR, COLUMBUS, OH, 43227-3335
SITUATED IN THE STATE OF OHIO, COUNTY OF FRANKLIN AND IN THE CITY OF COLUMBUS, TO-WIT:

BEING LOT NUMBER TWO HUNDRED SIXTY (260), OF BERWICK MANOR NO. 2, AS THE SAME IS NUMBERED AND DELINEATED UPON THE RECORDED PLAT THEREOF, OF RECORD IN PLAT BOOK 28, PAGES 32 AND 33, RECORDER'S OFFICE, FRANKLIN COUNTY, OHIO.

COMMONLY KNOWN AS 3815 DEHNER DR, COLUMBUS, OHIO 43227

If my representations in Section 1 continue to be true in all material respects, then this CITI Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship or my default is imminent,, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents; a permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage.

   C. I have provided documentation for **ALL** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the CITI Affordable Modification program ("Program"));

   D. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the

Program, are true and correct;

E. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

F. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. TIME IS OF THE ESSENCE under this Agreement;

    B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations herein are no longer true and correct, or any covenant by me has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    C. I understand that the Loan Documents will not be modified unless and until (i) The Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 06/21/11 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 08/01/11.

    A. **Unpaid Principal Balance.** As of July 1, 2011, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $107,786.39 consisting of the unpaid amounts loaned to Borrower, previously deferred amounts, if any, plus any interest and other amounts capitalized.

    B. **Waived or Forgiven Late Charges.** For and in consideration of the modification of the loan as described herein, Lender has agreed to waive or forgive accrued, unpaid late charges. The total amount of accrued, unpaid late charges waived or forgiven is U.S. $313.20.

    C. **Deferred Principal Balance.** For and in consideration of the modification of the loan as described herein, Lender has agreed to defer a portion of the Unpaid Principal Balance in an amount equal to $ 0.00 ("Deferred Principal Balance"). The Deferred Principal Balance, if any, is in addition to the Modified Principal Balance shall continue to be due and owing by Borrower to Lender; provided however, Lender agrees that for so long as Borrower makes the principal and interest payments in a timely manner and ultimately pays the Deferred Principal Balance to the extent obligated under the terms of the Note or Security Instrument, which if not sooner demanded, shall be due and payable upon the earlier of any voluntary loan payoff or on the Maturity Date, when the final balloon payment will become due and payable. Lender will not seek to enforce its security interest under the terms of the Security Instrument solely for failure to pay the Deferred Principal Balance. Any deferred principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, you are advised to seek guidance from a tax professional.

    D. **WAIVED OR FORGIVEN UNPAID PRINCIPAL BALANCE.** For and in consideration of the modification of the loan as described herein, Note Holder has agreed to waive or forgive unpaid principal balance in the amount of U.S. $ 0.00. Any principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, you are

advised to seek guidance from a tax professional.

E. **Modified Principal Balance.** Borrower acknowledges that the Modified Principal Balance payable under the Note and the Security Instrument shall be calculated as set forth below:

| | | |
|---|---|---|
| i) | Principal Balance | $ 100,420.78 |
| ii) | Accrued unpaid Interest | $ 2,545.68 |
| iii) | Accrued unpaid late charges | $ 229.20 |
| iv) | Advances regarding delinquent real estate taxes or to pay insurance premiums | $ 1,021.01 |
| v) | Appraisal fees, attorneys fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims | $ 2072.00 |
| vi) | Previously deferred amounts | $ 1497.72 |
| | Total (the "Unpaid Principal Balance" from Section 3(A)) | $ 107,786.39 |

Less:
| | |
|---|---|
| Forgiven Late Charges from Section 3(B) | $313.20 |
| Deferred Principal Balance from Section 3(C) | $ 0.00 |
| Waived or Forgiven Unpaid Principal Balance (D) | $ 0.00 |

Plus:
| | |
|---|---|
| Advances to establish initial escrow account, if any | $0.00 |
| Total (the "Modified Principal Balance") | $ 107,473.19 |

F. **Repayment Terms.** Borrower promises to pay the Modified Principal Balance, plus interest, to the order of Lender as set forth below:

   i)  The Maturity Date, as hereinafter defined, is 10/01/37. If on the Maturity Date Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.
   ii) The interest rate will begin to accrue as of 07/01/11 and the first new monthly payment on the Modified Principal Balance will be due on 08/01/11.
   iii) $ 0.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance less the Waived or Forgiven Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 107,473.19. Interest at the rate of 4.00000% will begin to accrue on the Interest Bearing Principal Balance as of 07/01/11 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 08/01/11. My payment schedule for the modified Loan is as follows until the loan reaches the Maturity Date when the final balloon payment will become due and payable:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| [1-2] | 4.00% | 07/01/11 | $ 551.61 | $ 238.76, may adjust periodically | $ 790.37, may adjust periodically | 08/01/11 | 24 |
| [3] | 5.00% | 07/01/13 | $ 609.45 | May adjust periodically | May adjust periodically | 08/01/13 | 12 |
| [4-26] | 5.07% | 07/01/14 | $ 613.48 | May adjust periodically | May adjust periodically | 08/01/14 | 279 |

\* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step or simple interest rate. I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATIED WITH A NEW LOAN. EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

G. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

H. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth herein.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (1) a borrower or co-borrower is deceased (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents) or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other

payments, the amount of which may change periodically over the term of my Loan.

5. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 5. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 5

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

A. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

B. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

C. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

D. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

E. That, as of the Modification Effective Date, if any provision in the Note, as amended, allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

F. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

G. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement or a letter Agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected documentation , the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program

H. That Lender will collect and record personal information such as my name, address, telephone number, social security number, credit score, income, payment history, and information about account balances and activity.

I. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is

replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Agreement shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement

J. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

K. I acknowledge that the Deferred Principal Balance set forth above may or may not be reflected in the loan amount reported by Lender to any credit reporting agency or reported as part of the balance on any receipt or statement issued by Lender, but nevertheless I acknowledge that such Deferred Principal Balance is due and payable as set forth above.

L. Notwithstanding the foregoing, to the extent personal liability has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, nothing contained herein shall be construed to impose personal liability to repay any such obligation where any obligations have been so discharged. If any bankruptcy proceeding is pending or completed during a time period related to entering this Agreement, I understand that I enter this Agreement voluntarily and that this Agreement, or actions taken by the Lender in relation to this Agreement, does not constitute a demand for payment or any attempt to collect any such obligation.

[ x ] MERS LOAN. If this box is checked, the loan evidenced by the Note and secured by the Security Instrument was assigned to or the Security Instrument was prepared in the name of Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of 1901 E Voorhees Street Suite C, Danville, IL 61834 or P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

EXECUTED effective as of the day and year first above written.

ACCEPTED AND AGREED TO BY:
CitiMortgage, Inc. Lender or Power of Attorney for Lender

By: _____
8/18/11

Larry Baumann
Vice President

[SEAL: CITIMORTGAGE, INC. NEW YORK]

_____ JOHN S JONES
6-29-11
Date

_____ KIM R HOWARD-JONES
6-29-11
Date

[If applicable] Non-Borrower Spouse, I acknowledge Agreement but do not assume any personal liability on the Note

If MERS Loan:
Mortgage Electronic Registration Systems, Inc.
Nominee for Lender

By: _____
       8/18/14

Larry **Baumann**
Assistant Secretary
Mortgage Electronic Registration Systems, Inc.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

State of Missouri        )
                         )
County of St Charles     )

On __8/18/2011__, before me appeared <u>Larry Baumann</u>, to me personally known, being by me duly sworn or affirmed, whose address is <u>1000 Technology Drive, O'Fallon, MO 63368-2240</u> did say that he is the <u>Vice President Of Citimortgage, Inc.</u>, and that the seal fixed to the foregoing instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation, by authority of its Board of Directors, and <u>Larry Baumann</u> acknowledged said instrument to be the free act and deed of said corporation, and that such individual made such appearance before the undersigned in the City of O'Fallon, State of Missouri.

_____
Notary Public

KRISTEN DUGGER
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: Oct. 31, 2011
Commission # 07340137

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**COLUMBUS DIVISION**

| | |
|---|---|
| In Re: | Case No. 2:15-bk-50141 |
| John S. Jones | |
| Kim R. Howard-Jones | |
|   *fka* Kim Howard | Chapter 13 |
|   *fka* Kim Lewis | |
| Debtors. | Judge C. Kathryn Preston |

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Notice of Mortgage Payment Change was served **electronically** on August 11, 2020 through the Court's ECF System on all ECF participants registered in this case at the e-mail address registered with the Court

And by **ordinary U.S. Mail** on August 11, 2020 addressed to:

    John S. Jones, Debtor
    3815 Dehner Dr.
    Columbus, OH 43227

    Kim R. Howard-Jones, Debtor
    3815 Dehner Dr.
    Columbus, OH 43227

                                Respectfully Submitted,

                                /s/ Molly Slutsky Simons
                                Molly Slutsky Simons (0083702)
                                Sottile & Barile, Attorneys at Law
                                394 Wards Corner Road, Suite 180
                                Loveland, OH 45140
                                Phone: 513.444.4100
                                Email: bankruptcy@sottileandbarile.com
                                Attorney for Creditor